```
         UNITED STATES DISTRICT COURT
   FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
              WESTERN DIVISION
```

INEZ ROBERSON                                          PLAINTIFF

VERSUS                    CIVIL ACTION NUMBER: 5:07cv73-DCB-JMR

ISLE OF CAPRI CASINO, INC.                             DEFENDANT

## OPINION AND ORDER

This cause comes before the Court on the defendant's Motion for Summary Judgment [**docket entry no. 26**]. Having carefully considered said Motion, memoranda in support and opposition thereof, applicable statutory and case law, and being otherwise fully advised in the premises, the Court finds and orders as follows:

### I. BACKGROUND AND PROCEDURAL HISTORY

On September 19, 2004, the plaintiff Inez Roberson and her sister Lottie Nassar visited the defendant Isle of Capri Casino, Inc.'s ("Isle"'s) place of business in Vicksburg, Mississippi. At approximately 6:25 p.m., the plaintiff stepped onto a down escalator which led to the lower level of the casino. When Nassar attempted to follow her sister on the escalator a few moments later, she purportedly lost her balance, fell forward, and collided with the plaintiff. After leaving the casino, Roberson and Nassar both sought medical attention in the emergency room of the River Region Medical Center in Vicksburg.

On March 12, 2007, the plaintiff initiated a lawsuit against the defendant in the Circuit Court of Warren County, Mississippi. (Compl. 1.)  In her complaint, Roberson alleges that she sustained injuries in the September 19, 2004, escalator incident due to the defendant's negligent failure[1] to provide adequate lighting and to remove vision obstructions from the relevant portions of the premises. (Compl. ¶¶ V-VII.)  The plaintiff also contends that she experienced a subsequent fall as a consequence of these same injuries. (Compl. ¶ VII.)

On April 9, 2007, the defendant filed its Notice of Removal [docket entry no. 1] of the case to this Court pursuant to 28 U.S.C. § 1441, asserting diversity of citizenship jurisdiction under 28 U.S.C. § 1332.  Following a period of discovery, the defendant filed its Motion for Summary Judgment [docket entry no. 26] on December 28, 2007.  On January 14, 2008, the plaintiff filed its Memorandum in Opposition [docket entry no. 29] to the same, and the defendant filed its Rebuttal [docket entry no. 30] on January 22, 2008.  The defendant's Motion is now before the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is apposite "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[1] The plaintiff raises claims for negligence and negligence per se in her complaint.

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] The party moving for summary judgment bears the initial responsibility of apprising the district court of the basis for its motion and the parts of the record which indicate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

"Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). But the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Moreover, "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for

---

[2] "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." Ginsberg 1985 Real Estate Partnership v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994) (internal citations omitted).

summary judgment.  Anderson, 477 U.S. at 252, 106 S. Ct. at 2512. The nonmovant must instead come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Summary judgment is properly rendered when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552.

### III. ANALYSIS

*A. The Parties' Arguments*

1. Defendant

The defendant contends that it "is entitled to summary judgment as to all of Plaintiff's claims because she cannot show a breach of any duty by Isle to keep its premises reasonably safe, nor can Plaintiff show any proximately caused corresponding injury." (Def.'s Memo. 4.)

*a. Breach of Duty of Care*

As to the first argument, the defendant challenges the conclusion of the plaintiff's lighting expert Mark Woolard that the casino's "lighting is inadequate and created an unsafe condition." (Woolard Report, Def.'s Ex. E at 2.)  Isle asserts that because Woolard relies upon mere recommended lighting standards promoted by the Illuminating Engineering Society of North America Handbook Ninth Edition ("IESNA") and the National Fire Protection

4

Association ("NFPA"), his opinion is not indicative of a breach of a duty of care applicable to Isle. Moreover, argues the defendant, because the reports of both Woolard and the Isle's lighting expert Berry Veney show that the lighting at the entrance of the elevator exceeded one foot candle[3], there could be no dangerous condition because the defendant complied with the one foot candle prescription of the Southern Building Code which had been adopted by the City of Vicksburg as its local building code and had been applied to Isle through City of Vicksburg Ordinance 93-7. Isle also posits that because the IESNA recommends 30-50 foot candles for beginnings and endings of stairs and escalator runs but the NFPA suggests one foot candle for floors and walking surfaces other than new stairs, Woolard's opinion is cast into doubt because he cannot decide which recommended standard to apply.

   *b. Proximate Causation*

   As to the causation argument, Isle contends that any injuries which the plaintiff suffered during the accident were proximately caused by the plaintiff's "urging of Nasser [sic] to get on the escalator and Nasser's [sic] decision to get on it, despite the difficulties Nasser [sic] was having seeing and her knowledge of other means of getting downstairs." (Def.'s Memo. 11.)

   The defendant also questions the plaintiff's alleged injuries to her face, head, left shoulder, left back, and left leg and knee.

---

[3] A foot candle is a unit of illuminance.

As to the left knee injury, Isle points out that the plaintiff did not complain of any knee injury on the day of the accident and asserts that she has no objective evidence to support her contention that her back injury on the day of the accident caused her to injure her knee via a fall in her driveway in October 2006. In support of its position, the defendant declares that the plaintiff had at least nineteen doctor visits concerning back pain prior to the date of the accident at the casino.

The defendant challenges the plaintiff's contention that certain head and facial injuries (specifically a TMJ diagnosis one month after the accident) were caused by the escalator incident, noting that the surveillance video and emergency room records from August 19, 2004, do not indicate any such injuries. In addition, Isle points out that Roberson had numerous head and facial issues and doctor visits before the date of the accident, as well as a couple thereafter.

As to Roberson's purported left shoulder injuries (specifically rotator cuff tears and tendonitis), the defendant suggests that the surveillance video indicates no injury to the plaintiff's left shoulder because she did not touch or point to the shoulder and had two handbags on that shoulder about a minute after the fall. In addition, Isle asserts that the plaintiff failed to state in her deposition and in her consultation with Dr. Field (an orthopaedist the plaintiff consulted in August 2007) that she had

6

a car accident in which she injured her shoulder less than a month before the Isle incident and that she had prior problems with her left shoulder for which she sought medical treatment. Isle also points out that Roberson's medical records show a history of left hand and arm issues and doctor visits before the August 19, 2004, incident at the casino.

The defendant argues that, because of the "seemingly unprecedented number of medical visits for non-specific pain to Plaintiff's left arm, hand, shoulder and left side of her body in general, it is impossible for any reasonable juror to conclude that any of the ambiguous injuries Plaintiff attempts to place at issue were proximately caused by the incident at Isle." (Def.'s Memo. 24.) Isle also concludes that "[i]f Plaintiff has any injuries to the left side of her body as alleged, those injuries were the result of countless numbers of falls, hits to the head, cuts to the hand, car wrecks and degenerative conditions suffered by Plaintiff, not Nasser [sic] falling next to her at Isle." (Def.'s Memo. 24.)

2. Plaintiff

   *a. Breach of Duty of Care*

In response to the defendant's argument about the adequacy of the lighting at the escalator entrance, Roberson states that the fact that Isle may have complied with the requirements of the local building code is not dispositive of whether it breached the applicable standard of care. The plaintiff also asserts that the

7

recommended IESNA lighting standards may be used to show the defendant's lack of due care even though they are not mandatory. Because Woolard opines that the amount of light at the entrance of the escalator was unsafe, argues the plaintiff, a genuine issue of material fact exists as to whether the applicable standard of care was met by Isle.

   *b. Proximate Causation*

In response to the defendant's causation argument, the plaintiff posits that the fact she suffered from medical conditions and may have been susceptible to injury prior to August 19, 2004, would not preclude a reasonable jury from finding that the escalator incident caused injuries or exacerbated prior medical conditions.  Roberson asserts that her medical records and deposition testimony present a genuine issue as to whether the casino accident proximately caused the injuries for which she seeks compensation.

The plaintiff points to the medical records from her emergency room visit at River Region Medical Center which mention that she experienced contusions and/or tenderness to her left shoulder, left side/rib, left back, left hand, and left wrist, and a sprain to her left wrist for which she was given a splint and sling.  The records also recount the plaintiff's report of pain to her left hand, left shoulder, and back.  In addition, the medical documents reveal that x-rays of Roberson's left hand, wrist, side, and shoulder were

ordered on August 19, 2004.  The plaintiff also notes that Dr. Field stated in his deposition that he had no reason to doubt her correlation of the August 19, 2004, incident to her shoulder pain and problems several years later.

As to the left knee injury which she sustained in October 2006, Roberson points to the medical records from Dr. O'Mara which suggest that her back was at least partially responsible for her knee injury.  The plaintiff also urges that her deposition testimony and medical records from a doctor visit a month after the accident support her claim that the collision with her sister on the escalator caused her TMJ syndrome.

Lastly, Roberson asserts that whether she was contributorily negligent and whether her sister was a superseding, intervening cause are issues reserved for the trier of fact and on which the defendant bears the burden of proof.

*B. Application of Law to Facts*

As is the situation in this case, a federal court sitting in diversity is obligated to apply state substantive law.  Times-Picayune Pub. Corp. v. Zurich Am. Ins. Co., 421 F.3d 328, 334 (5th Cir. 2005) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).[4]

1. Negligence Per Se Claim

---

[4] The parties do not dispute that the substantive law of Mississippi is applicable to this matter.

In her complaint, Roberson states that the defendant failed "to maintain the premises in conformance with applicable building and safety codes, and other regulations and statutes, for which defendant is liable pursuant to the doctrine of negligence per se." (Compl. ¶ VI(e).)  According to the Supreme Court of Mississippi,

> Mississippi recognizes the doctrine of negligence per se, which essentially provides that breach of a statute or ordinance may render the offender liable in tort without proof of lack of due care.  Violations of a statute or ordinance constitutes negligence per se and will support a cause of action in tort where (1) the plaintiff is within the class protected by the statute, and (2) the harm sustained is the type sought to be prevented by the statute.

Simpson v. Boyd, 880 So. 2d 1047, 1052-53 (Miss. 2004) (internal citations omitted).

In this case, the parties apparently agree that by virtue of the City of Vicksburg's Ordinance 93-7, Isle was bound to comply with the standards set forth in the Standard Building Code of 1997[5] § 1016.1.  This section mandates a minimum one footcandle light intensity at floor level for means of ingress, including an escalator leading to a public way.  Both the plaintiff's and defendant's experts agree that the lighting levels germane to the escalator in question exceed one footcandle.  (Woolard Report, Def.'s Ex. E at 2; Veney Report, Def.'s Ex. H at 1.)  Therefore,

---

[5] The Southern Building Code Congress International publishes the Standard Building Code.

because no genuine issue of material fact exists as to whether the defendant violated the lighting standard mandated by Ordinance 93-7, the defendant is entitled to a judgment as a matter of law on the plaintiff's negligence per se claim.

2. Negligence Claim

"The traditional elements of negligence are duty or standard of care, breach of that duty, proximate causation, and damages or injury." Thomas v. Columbia Group, LLC, 969 So. 2d 849, 852 (Miss. 2007).

In this premises liability case, the status of the plaintiff is critical to determining what duty was owed to her. Under Mississippi law, "[a] person is considered an invitee if he enters the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage." Id. The parties appear to agree that the plaintiff was an invitee at the defendant's casino on the date in question because she was on the premises at Isle's invitation for their mutual advantage.

> In Mississippi, a plaintiff's premises liability claim can be based on one of three theories: (1) that defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that defendant had actual knowledge of a condition which defendant itself did not cause, but defendant failed to adequately warn plaintiff of the danger she faced as an invitee; or (3) that, based upon the passage of time, defendant should have known of the dangerous condition caused by another party if defendant had acted reasonably . . . .

11

Vu v. Clayton, 765 So. 2d 1253, 1255 (Miss. 2000). Because there is no suggestion by either party that a third person's action or inaction led to the escalator incident, the Court assumes that the plaintiff is basing her negligence claim upon the theory that the defendant created the dangerous condition which caused her injuries. That being the case, "[n]o proof of [Isle's] knowledge of the condition is necessary where the condition is created by [its] negligence or the negligence of someone under [its] authority." Drennan v. The Kroger Co., 672 So. 2d 1168, 1170 (Miss. 1996).

   *a. Breach of Duty of Care*

"A landowner owes an invitee the duty 'to keep the premises reasonably safe and when not reasonably safe to warn where there is hidden danger or peril that is not in plain and open view.'" Mayfield v. The Hairbender, 903 So. 2d 733, 738 (Miss. 2005) (quoting Massey v. Tingle, 867 So. 2d 235, 239 (Miss. 2004)). According to the Supreme Court of Mississippi, "[t]hese two duties . . . are separate. The breach of either duty supports a claim of negligence." Id. at 739.

   Mark Woolard, the plaintiff's lighting expert, stated in his report that the lighting at the entrance to the down escalator "is inadequate and created an unsafe condition." (Woolard Report, Def.'s Ex. E at 2.) The Court is of the opinion that this statement is sufficient to create a genuine issue of material fact

12

as to whether Isle maintained the casino premises in a reasonably safe condition. The fact that the defendant complied with Ordinance 93-7 and the local building code, while dispositive of the negligence per se claim, is not conclusive as to whether Isle exercised reasonable care in the lighting of the escalator entrance. Cf. Mississippi Power & Light Co. v. Walters, 158 So. 2d 2, 18 (Miss. 1963); Galloway v. Singing River Elec. Power Ass'n, Inc., 152 So. 2d 710, 712 (Miss. 1963); Cont'l So. Lines v. Klaas, 65 So. 2d 575, 584 (Miss. 1953).

Moreover, while the two recommended standards upon which Woolard relies are not binding upon the defendant and may contradict each other, they are nevertheless germane to the breach of the standard of care calculus. The appropriate weight, if any, that should be given to Woolard's opinion informed by such standards is a question reserved for the finder of fact.

Because the Court has determined that a triable issue exists as to whether Isle breached its duty to keep the casino premises in a reasonably safe condition, the Court need not decide whether the lighting of the escalator entrance constituted an unreasonably safe condition that was a "hidden danger or peril . . . not in plain and open view" of which the defendant had a duty to warn its invitees because "[t]he breach of either duty supports a claim of negligence." Mayfield, 903 So. 2d at 739.

　　*b. Proximate Causation*

"[W]hen reasonable minds might differ on the matter, the question of what is the proximate cause of an injury is usually a question for the jury."[6] Am. Creosote Works of Louisiana v. Harp, 60 So. 2d 514, 517 (Miss. 1952). However, this fact does not alter the requirement that the non-movant must present sufficient evidence that would permit a reasonable jury to find that the breach of a duty proximately caused the injuries alleged. Davis, 957 So. 2d at 410.

First, as to the plaintiff's injuries to her hand and wrist, the fact that on the same day as the accident she presented with tenderness and contusions to her hand and wrist and Dr. Carr took x-rays of her wrist and hand and ordered that she wear a splint and sling is sufficient evidence to allow a reasonable jury to find that the escalator incident proximately caused the injuries to her hand and wrist.

Second are Roberson's alleged head and facial injuries. The plaintiff testified in her deposition that her sister's head struck her face during the collision at the casino. One month later, the plaintiff received a diagnosis of TMJ arthritis upon consulting a physician for pain she was experiencing in the left side of her

---

[6] Whether the plaintiff was contributorily negligent in urging Nassar to get on the elevator and whether Nassar was a superseding, intervening proximate cause of the plaintiff's injuries are also questions reserved for the finder of fact. Davis v. Christian Bros. Homes of Jackson, Mississippi, Inc., 957 So. 2d 390, 410 (Miss. Ct. App. 2007); Green v. Dalewood Prop. Owners' Ass'n, Inc., 919 So. 2d 1000, 1009 (Miss. Ct. App. 2005).

face. It is true, as the defendant points out, that Roberson did not complain of any facial or head pain at the emergency room on the date of the escalator incident, and is there no testimony from a medical expert in the record which would connect the TMJ with the casino accident. However, drawing all reasonable inferences in the plaintiff's favor, the Court is of the opinion that the plaintiff's testimony that her sister's head stuck her own, combined with the temporal proximity of her TMJ diagnosis to the date of the incident, could permit a reasonable jury to conclude that the impact of Lottie Nassar's head to the plaintiff's head and face proximately caused her TMJ condition.

Next, the medical records from the day of the accident indicate that the plaintiff presented with tenderness to her shoulder and that an x-ray of her shoulder was ordered. The deposition testimony of Dr. Field indicates that there is some possibility that the escalator incident is responsible for Roberson's continued pain and problems in her left shoulder, even taking into account the May 2006 incident at the plaintiff's home where she injured the same shoulder. Dr. Field also testified that the June 2004 car accident was not the more likely cause of her shoulder injury. Although the surveillance video may reveal that Roberson was carrying two handbags on her left shoulder only moments after the accident, and even though the plaintiff may not have disclosed the prior occasions on which her shoulder was

15

injured to Dr. Field, these facts go toward the severity and credibility determinations that the jury will make. Drawing all justifiable inferences in the plaintiff's favor, there is barely enough evidence in the record which would permit a reasonable jury to find that the August 19, 2004, incident proximately caused the plaintiff's shoulder injuries for which she seeks to recover.

Last is the injury to the plaintiff's knee which she sustained after a fall in October 2006. The medical records reflect that the plaintiff did present to Dr. Carr with tenderness in her left side and back (including a contusion to her left rib) and that an x-ray of her left side was taken. The plaintiff attributes her October 2006 fall and accompanying knee injury to the back injury she received in the escalator incident, and opines that medical records from Dr. O'Mara can be read to suggest that her knee condition may be derived from her back. On the other hand, in contrast to Dr. Field's testimony regarding the plaintiff's shoulder, Dr. O'Mara does not relate the plaintiff's knee condition to the particular injury to her back which she incurred on August 19, 2004. Drawing all reasonable inferences in favor of the non-movant, the Court is of the opinion that barely enough evidence exists which would permit a reasonable jury to find that the plaintiff's knee injury was proximately caused by the injury to her back she alleges she sustained in the escalator incident.

Accordingly, the Court finds that the defendant is not

16

entitled to a judgment as a matter of law on the plaintiff's negligence claim for damages based upon her hand, wrist, head, face, shoulder, and knee/back injuries.

### IV. CONCLUSION AND ORDER

Based upon the foregoing analysis and authorities,

**IT IS HEREBY ORDERED** that the defendant's Motion for Summary Judgment [**docket entry no. 26**] is **GRANTED IN PART** and **DENIED IN PART.**

**SO ORDERED,** this the ___28th___ day of February 2008.

                              ___s/ David Bramlette___
                              **UNITED STATES DISTRICT JUDGE**